Richard G. Grant
Tex. Bar No. 08302650
CULHANE MEADOWS, PLLC
The Crescent, Suite 700
100 Crescent Court
Dallas, Texas 75201
Telephone: 214-210-2929
Email: rgrant@culhanemeadows.com

PROPOSED ATTORNEYS FOR
DEBTOR IN POSSESSION

## UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| DIVINE DINING, LLC, | § | Case No. 18-32805-SGJ-11 |
| | § | Chapter 11 |
| Debtor | § | |
| | § | |

## MOTION UNDER SECTION 543(D) OF THE BANKRUPTCY CODE REGARDING RECEIVER AS DEBTOR IN POSSESSION

Divine Dining, LLC, as debtor and debtor in possession in the above-captioned chapter 11 case (the "**Debtor**"), and Elizabeth C. Brandon, as Receiver ("**Receiver**" and collectively with the Debtor, "**Movants**"), file this *Joint Motion Under Section 543(D) of the Bankruptcy Code Regarding Receiver as Debtor in Possession* (this "**Motion**") and respectfully states as follows:

### I.      JURISDICTION AND VENUE

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157, and the Standing Order of Reference from the United States District Court for the Northern District of Texas. This is a core proceeding pursuant to 28 U.S.C. § 157(b).   Movants consent to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in

connection herewith consistent with Article III of the United States Constitution.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory and legal predicate for the relief requested herein are sections 543 of the Bankruptcy Code.

## II.      GENERAL BACKGROUND

1.      Elizabeth C. Brandon is the Receiver for Divine Dining, LLC, appointed in *Michael Mantas v. Jordan J. Johnson, et al*, Cause No. 18-03705/18-04074, (the "Receivership Action") by the116th District Court, Dallas County, Texas (the "Receivership Court"). Attached hereto as **Exhibit A** is the *Agreed Order Appointing Receiver* entered April 9, 2018 by the Receivership Court.

2.      The Debtor owns and operates a single "Taco Casa" franchise restaurant location in Irving, Texas.  Boasting that it's "still the same since 1972," the quick-service chain maintains its positioning of freshness, serving classic Mexican dishes such as tacos and burritos, typically for under $3.

3.      The Debtor leases the premises from Adelphi Group, Ltd. ("Landlord").  The Debtor holds a franchise agreement with Roy Upshaw, Individually d/b/a Taco Casa ("Franchisor").  The Debtor has no known secured creditors and its cash is not subject to any lien.  To my knowledge, its creditors consist solely of the Landlord, Franchisor, employees, trade (food) vendors, prepetition professionals, utilities and taxing authorities.

4.      The Debtor is owned by Jordan J. Johnson and Michael Mantas (the "Owners"), each with an equal ownership interest.  Due to conflicts among the Owners, the parties agreed to the appointment of a receiver.  Ms. Brandon was appointed by the Receivership Court to act as receiver for the Debtor.

5.     The Receiver attempted various forms of workout of the business relationships of the parties in the Receivership Action.  All were ultimately unsuccessful due to the parties' inability to reach a consensus on resolution and the lack of recovery in the event of a liquidation sale of the assets.  As a result, at my request, on August 14, 2018, the Receivership Court authorized the filing of a Chapter 11 bankruptcy by the Receiver on behalf of the Debtor. Attached hereto as **Exhibit B** is the *Order* entered August 14, 2018 authorizing the Receiver to commence this Chapter 11 proceeding.

6.     On August 27, 2018 (the "**Petition Date**"), I authorized the Debtor to commence this case under Chapter 11 of the Bankruptcy Code (the "**Chapter 11 Case**").

## III.     EVENTS LEADING TO THIS CHAPTER 11

7.     As stated earlier, disputes between the Debtor's Owners resulted in the Debtor's inability to effectively function. Upon my appointment as Receiver and after analysis of the business situation, the Receiver determined that the most logical outcome of this workout would be a sale of the Debtor's business to a related or third-party buyer.  Potential buyers included one or more of the existing owners, the Franchisor, the Landlord, or third parties supported by one or more of the foregoing factions. Several sale and restructuring proposals were made by various parties; however, an agreement was not forthcoming because of the factious nature of their relationships. Absent the power of this Bankruptcy Court to compel assumption and assignment of both the Franchise Agreement and the Lease, it became apparent that no reorganization was possible absent Chapter 11. Moreover, although the revenue of the restaurant is relatively consistent, it was insufficient to service the existing and legacy Lease and franchise obligations absent capital contributions from the Owners, which were declined. Accordingly, rent concessions would likely be needed to support a purchase.

8.      In the Receiver's opinion, a liquidation of the Debtor would result in almost no recovery to the Landlord, Franchisor or the other creditors. On the other hand, a sale with assumption of the lease and franchise agreement would likely result in payment in full of all creditors. Accordingly, the Receiver solicited offers from the various parties to act as a stalking horse bidder to purchase the assets of the Debtor. That process was successful, resulting in an offer received on August 24, 2018 to purchase the Debtor's assets for a price equal to the full assumption amounts on all the executory contracts and unexpired leases plus the payment of $50,000, which is enough to satisfy all other creditors of the estate. The potential purchase also placed a $25,000 down payment on the purchase price with the agreement that such funds could be utilized to fund the costs of the reorganization and sale.

9.      Accordingly, the Receiver decided to file for Chapter 11 relief to facilitate the sale.

## IV.      RELIEF REQUESTED

10.     Movant, hereby requests the Court ("Motion") pursuant to section 543(d) of title 11 of the United States Code ("Bankruptcy Code") for entry of an order excusing the Receiver from compliance with section 543(a), (b), and (c) of the Bankruptcy Code, permitting Receiver to act as Debtor in Possession in this Case, subject to all of the requirements thereof, but excusing the Receiver of all of the other requirements of Section 543(a) – (c) of the Bankruptcy Code, as permitted and indicated by Section 543(d) of the Code.

## V.      LEGAL ANALYSIS

11.     The filing of a bankruptcy by or on behalf of a receivership entity typically divests the receiver of authority.  In most cases, removing the receiver will be detrimental to the estate.  At the very least, the bankruptcy court will have to appoint a trustee to replace the

receiver resulting in disruption in the management of the assets and additional costs. These costs can be most easily avoided if the receivership order, as is the case here, is prepared with the potential of bankruptcy in mind. This was done so in this case. Here, it is in the best interests of all concerned that the receiver continues in control over the debtor and is consistent with the directives of the Receivership Court.

12.     Upon the filing of a bankruptcy, receivership property becomes estate property. Control over that property then shifts from the receivership court to the bankruptcy court. Section 543 of the Bankruptcy Code directs receivers to turnover any property of the debtor in their control to the bankruptcy trustee or debtor-in-possession.[1] It also forbids the receiver from taking action except as necessary to preserve the property.

13.     The turnover requirement of section 543 can present a significant problem for the estate. At the start of a case under chapter 11 or an involuntary case under chapter 7, the debtor's management typically continues to act on behalf of the debtor. Normally, the receiver would have to return whatever property in his control to the debtor's management. In an equity receivership, however, the receivership court, usually at the request of a regulatory agency, has removed the company's mangers from control based on their misfeasance. The bankruptcy court would surely wish to avoid allowing the disgraced managers to regain control. Thus, it will have to appoint a trustee to replace the receiver. Replacing the receiver will lead to significant additional costs and disruption as one court appointee is replaced with another. The key, then, is to avoid the operation of section 543.

14.     There are several options that the court may use to avoid section 543. The bankruptcy court can abstain from hearing the case. If it abstains, the bankruptcy court will

---

[1] 11 U.S.C. §543(a). Section 543 applies to "custodians" of the debtor's property. The Code defines "custodians" to include a receiver appointed by any court. 11 U.S.C. §101(11).

either dismiss the bankruptcy outright or stay it in favor of the pending receivership action.[2] If the bankruptcy court chooses to keep the case, it can recognize the receiver as the debtor-in-possession, excuse turnover under section 543(d), or appoint the receiver as the trustee. The Receiver has immediately sought an order from the bankruptcy court temporarily excusing it from complying with section 543 while the court determines how best to go forward.

### A.  Possible Solution 1: Abstention

15.     One solution is for the bankruptcy court to abstain under section 305 of the Bankruptcy Code. While it is discretionary, bankruptcy courts generally abstain when the following factors exist: (1) the petition was filed by a few recalcitrant creditors and most creditors oppose the bankruptcy; (2) there is a pending state insolvency proceeding; and (3) dismissal is in the best interest of the debtor and all creditors.[3] Some courts have additionally held that "economy and efficiency of the administration must be key considerations in the abstention decision."[4] Abstention is particularly appropriate "where considerations of comity with state and federal administrative proceedings would dictate that the Bankruptcy Court stay its hand in order to prevent undue interference or entanglement with state or federal administrative and regulatory schemes."[5]

16.     The seminal case in this area is *In re Michael S. Starbuck, Inc.*[6] There, a receiver was appointed to administer the estate of two entities shut down by the SEC. The receiver retained counsel and independent professionals to assist in the administration of the estate.

---

[2] 11 U.S.C. §305(a)

[3] *GMAM Inv. Funds Trust I v. Globo Comunicacoes e Participacoes S.A.*, 317 B.R. 235, 254 (Bankr. S.D.N.Y. 2004); *In re Sherwood Enters., Inc.*, 112 B.R. 165, 168 (Bankr. S.D. Tex. 1989).

[4] *Id. In re O'Neil Village Personal Care Corp.*, 88 B.R. 76, 80 (Bankr. W.D. Pa. 1988). (citing cases).

[5] *In re First Fin. Enters., Inc.*, 99 B.R. 751, 754 (Bankr. W.D. Tex. 1989); *see also Barbee v. Colonial Healthcare Center, Inc.*, 2004 WL 609394, *1-*2 (N.D. Tex. 2004) (upholding bankruptcy court's permissive abstention out of deference to comity and to the existence of a closely related state law proceeding under way).

[6] 14 B.R. 134 (Bankr. S.D.N.Y. 1981).

Nearly fifteen months after the appointment of the receiver, a group of estate creditors, unhappy with the results of the receivership, filed involuntary petitions against the estate.

17.    The receiver moved for abstention.  Evaluating the receiver's motion, the *Starbuck* court noted that "there is no need to invoke the machinery of the bankruptcy process if there is an alternative means of achieving the equitable distribution of assets."[7]  Ultimately, the court held that it was in the best interests of the creditors and the debtors to dismiss the proceedings; in so deciding, it stated that:

> Allowing this matter to continue as a debtor proceeding under the Bankruptcy Code would result in a terrible waste of time and resources.  Many services, already rendered in the administration of the receivership estate, would have to be repeated at additional expense to the estate.  No advantage would accrue to the creditors if this matter were to proceed in the bankruptcy court.  Rather, their best interests will be served by the continued administration of the equity receivership.[8]

18.    Here, there is no alternative means, in the Receiver's judgment, of achieving the equitable distribution of assets.  Here, it is in the best interest of creditors for this Chapter 11 case to proceed.   All parties are comfortable with the Receiver's judgment.

19.    The premise of abstention under section 305 does not apply here.[9]  The legislative history reveals that the law was designed to permit dismissal or suspension "where an arrangement is being worked out by creditors and the debtor out of court, there is no prejudice to the rights of creditors in that arrangement, and an involuntary case has been commenced by a few recalcitrant creditors to provide a basis for future threats to extract full payment."[10]

20.    Abstention is not the appropriate solution here.

---

[7] *Id.* at 135.
[8] *Id.*
[9] *See In re Nina Merchandise Corp.*, 5 B.R. 743, 747 (Bankr. S.D.N.Y. 1980) (stating that "it is evident that § 305 contemplates the instance where a non-federal insolvency has proceeded so far in those proceedings that it would be costly and time consuming to start afresh with the federal bankruptcy process.").
[10] *See* H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 325 (1977).

## B.    Possible Solution 2: Recognize the Receiver as the Debtor-in-Possession in a Chapter 11 Case

21.     In cases where the debtor's management is no longer capable of managing the company and the receiver is appointed to not only to administer the assets, but also to manage the company, some courts have found that the receiver acts as the manager of the debtor-in-possession.[11]  As such, the receiver is "automatically authorized to act as the debtor-in-possession," alleviating the need to appoint a separate Chapter 11 trustee.[12]

22.     The notion that a receiver appointed to take control of and manage a distressed company becomes, in effect, the debtor-in-possession upon the filing of a bankruptcy finds support in state law.  It is a general rule that "the appointment of a general receiver displaces and supersedes in its entirety the pre-receivership management of an entity."[13]  Accordingly, "when a general receiver is appointed by state court to wind up the affairs of a limited partnership, the receiver acts as management of the entity over which he has been appointed and has the authority to act for and on behalf of the limited partnership."[14]

23.     Recently, the Second Circuit held in *In re Bayou Group, L.L.C.*,[15] that a receiver appointed to resolve a securities fraud and given managerial power of the entity in receivership acted as the manager of the debtor-in-possession.  In that case, a group of hedge funds were operated as a Ponzi scheme until the massive fraud eventually collapsed, resulting in numerous investigations and lawsuits, including actions taken by the Securities and Exchange Commission and the Commodity Futures Trading Commission.  Eventually, the fraudulent enterprise was

---

[11] *See, e.g., Byers*, 609 F.3d at 93; *In re Bayou Group, L.L.C.*, 564 F.3d 541, 548 (2d Cir. 2009) (*Bayou Group II*).

[12] *In re Bayou Group, L.L.C.*, 363 B.R. 674, 686 (S.D.N.Y. 2007) (*Bayou Group I*).

[13] *In re Statepark Bldg. Group, Ltd.*, 316 B.R. 466, 471 (Bankr. N.D. Tex. 2004) (citing *Murphy v. Argonaut Oil Co.*, 23 S.W.2d 339, 342 (Tex. 1930); *see Brown v. Warner*, 14 S.W. 1032, 1033 (Tex. 1890) (holding that a receiver is appointed to "manage and preserve the property."); *Chitex Comm's., Inc. v. Kramer*, 168 B.R. 587, 590 (S.D. Tex. 1994) (stating that "Texas law asserts that the receiver has the full rights that the corporation had.").

[14] *In re Statepark Bldg. Group, Ltd.*, 316 B.R. at 471.

[15] *Bayou Group II*, 564 F.3d at 548.

forced into a federal receivership in the Southern District of New York. The district court appointed a "non-bankruptcy federal equity receiver and exclusive managing member" of the hedge funds. Shortly after his appointment, the receiver caused the hedge funds to file voluntary Chapter 11 petitions for relief. In response, the U.S. Trustee moved to appoint a chapter 11 trustee under 11 U.S.C. § 1104(a), arguing that a trustee was necessary to "fill the vacuum" of management because (i) Bayou's former managers were guilty of crimes or otherwise incapable of managing the fund and (ii) the receiver's role as manager ceased upon the filing of bankruptcy and he simply become a custodian of property that must be turned over to the debtor.[16] The bankruptcy court rejected the U.S. Trustee's arguments and permitted the receiver to control the debtor-in-possession in its bankruptcy proceedings.

24. The Second Circuit affirmed, holding that the receiver was empowered with "two hats—one as custodian, and one as "sole and exclusive" managing member of Bayou . . . . While the receiver's 'custodian' hat came off upon commencement of the Chapter 11 proceedings, his 'managing member' hat remained."[17] Moreover, the Court held that "[the receiver's] authority to manage the bankruptcy proceedings stems not from his position as 'federal equity receiver' but from the language in the Order specifically appointing him as Bayou's 'sole and exclusive managing member . . . .'"[18] Accordingly, the Court determined that the receiver was empowered to manage and control the debtor throughout the bankruptcy proceedings, and that the U.S. Trustee did not otherwise meet its extraordinary high burden to show that a replacement chapter 11 trustee should be appointed.[19]

---

[16] *Id*. at 545.
[17] *Id*.
[18] *Id*.
[19] *Id*. at 549.

25.     Similarly, in *SEC v. Byers*, a receiver was appointed upon request of the SEC to manage the proceeds of a massive Ponzi scheme.[20] That receiver was also granted authority by the receivership court to continue managing the receivership entities if a bankruptcy were filed. Citing to *Bayou Group*, the Second Circuit again held that a pre-petition court order empowering a receiver to manage and control a fraudulent enterprise results in "the receiver automatically becom[ing] debtor-in-possession by operation of law."[21] The Court further stated that "[t]here is no reason a district court cannot, pre-petition, appoint a manager for the entities, and there is nothing in the Bankruptcy Code that prevents that manager from continuing after the bankruptcy filing, subject to challenge by others."[22]

26.     The lesson of *Bayou Group* and *Byers* is that a carefully drafted receivership order can carry through to a subsequent bankruptcy. Both cases, however, involved receivers appointed by federal courts. Although the reasoning used by the Second Circuit in each case suggests that the answer would be the same if the receiver had been appointed by a state court in similar circumstances, the authority forbidding state courts from preventing a bankruptcy may lead to a different result.

27.     Here, the Receivership Order is quite precise:

IT IS FURTHER ORDERED that the Receiver may seek authorization of this Court to file voluntary petitions for relief under Title 11 of the United States Code (the "Bankruptcy Code") for any entity within the Business. 1f an entity within the Business is placed in bankruptcy proceedings, **the Receiver may become, and may be empowered to Operate each of the Receivership Property as, a debtor in possession. In such a situation, the Receiver shall have all of the powers and duties as provided a debtor in possession under the Bankruptcy Code to the exclusion of any other person or entity. As set forth herein, the**

---

[20] 609 F.3d 87, 90-91 (2d Cir. 2010).
[21] *Id.* at 93.
[22] *Id.*

**Receiver is vested with management authority for the Business and may therefore file and manage a Chapter 11 petition.**

Receivership Order at p. 6.

28. Moreover, the Receivership Order provides:

IT IS FURTHER ORDERED that the Receiver shall have **all powers, authorities, rights and privileges heretofore possessed by the officers, directors, managers and general and limited partners of the Business** and the Receivership Property under applicable state and federal law, by the governing charters, by-laws, articles and/or agreements in addition to all powers and authority of a receiver at equity, and all powers conferred upon a receiver by the provisions of Chapter 64 of the Texas Civil Practices and Remedies Code. The Receiver is authorized, subject to control of this Court and the laws of Texas regarding Receivership, to perform any and all duties and responsibilities to take all actions necessary to preserve the value of the Business and to operate the Business pursuant to this Order.

*Receivership Order* at p. 2.

29. The U.S. Trustee cites to Judge Jones' opinion in *In re Roxwell Performance Drilling, LLC,* Case No. 13-50301-RLJ-11 (Bankr. N.D. Tex.) for the proposition that the Receiver cannot act as debtor in possession. Judge's Jones opinion deals with a situation much like the circumstances discussed above and is distinguished on its facts from the case here. In Roxwell, the receivership order was less clear as to the power of the Receiver. Id. at p. 4. Whereas, in this case, the orders of the Receivership are quite clear that the Receiver has all of the powers of the managers of the Debtor and shall act as debtor in possession. *Receivership Order* at pp. 2 & 6.

30. For the foregoing reasons, the Receiver suggests that the ratification of this Court of the Receiver as debtor in possession is appropriate in this case.

**C.    Excuse Turnover under Section 543(d)**

31. The Court can also excuse the receiver from his section 543 obligations permitting her to retain control over the debtor. Section 543(d)(1) of the Code allows a

bankruptcy court to excuse compliance with the section where "the interests of creditors … would be better served" by allowing the receiver to continue in control. Section 543(d) cases are highly fact-intensive and decided on a case-by-case basis.[23] Factors that may be considered include the existence of preference actions for a trustee that a receiver could not implement, and overall effect of the Bankruptcy Code on the circumstances of the case.[24] The fundamental question under section 543 is whether the creditors would be better served by having the debtor take back control over property placed into the hands of a receiver by another court. Ultimately, this question turns on whether the debtor can be trusted to operate its business in the interests of the creditors. In an equity receivership, a court, albeit not the bankruptcy court, has already determined that the debtor cannot be trusted. Excusing turnover allows the bankruptcy court to retain control over the case without displacing the receiver.

32. The exact status of a receiver excused under section 543(d) is not settled. One line of cases holds that the excused receiver continues to act in accordance with the duties and responsibilities provided by state law and the order appointing him.[25] A second line of cases holds that, once excused from its section 543 obligations, a receiver "becomes the functional equivalent of a trustee."[26]

---

[23] *Dill v. Dime Savings Bank, FSB (In re Dill)*, 163 B.R. 221, 225-27 (E.D.N.Y. 1994); *In re Uno Broadcasting Corp.*, 167 B.R. 189, 200 (Bankr. D. Ariz. 1994). In applying section 543(d)(1), courts have considered: "(1) whether reorganization is likely; (2) that funds are necessary for such reorganization; and (3) mismanagement." *Powers Aero Marine Servs., Inc. v. Merrill Stevens Dry Dock Co. (In re Powers Aero Marine Servs., Inc.)*, 42 B.R. 540, 544 (Bankr. S.D. Tex. 1984); *In re WPAS, Inc.*, 6 B.R. 40 (Bankr. M.D. Fla. 1980). "[A] bankruptcy court should also consider whether or not there are avoidance issues raised with respect to the property retained by the receiver, because a receiver does not possess avoiding powers for the benefit of the estate." *In re Constable Plaza Assocs., L.P.*, 125 B.R. 98, 103 (Bankr. S.D.N.Y. 1991).

[24] *Dill*, 163 B.R. at 225-27; *In re Constable Plaza Assocs., L.P.*, 125 B.R. at 103.

[25] *See In re 400 Madison Avenue L.P.*, 213 B.R. 888, 895 (Bankr. S.D.N.Y. 1997)(holding that the excused receiver's role is limited to that set out in the order appointing him). The cases following *400 Madison Avenue L.P.* generally hold that the bankruptcy court "does not have leave to change the scope of the responsibilities placed upon the receiver by the state court except where specifically mandated by the Bankruptcy Code (e.g., §§ 327, 330, 331, 543(b))." *In re R&G Properties, Inc.*, 2008 WL 4966774 at *5 (Bankr. D. Vt. 2008); *also In re Falconridge, LLC*, 2007 WL 3332769 at *6 (Bankr. N.D. Ill. 2007)(holding that excused receiver would proceed pursuant to order of the state court appointing it).

[26] *In re 245 Assocs., Ltd.*, 188 B.R. 743, 750 (Bankr. S.D.N.Y. 1995); *In re Uno Broadcasting Corp.*, 167 B.R. 189, 201 (Bankr. D. Ariz. 1994); *In re Posadas Assocs.*, 127 B.R. 278, 281 (Bankr. D. N.M. 1991).

33.     This solution is not the best solution in this situation, as the estate needs a proper party in control so as to not leave a power vacuum.

### D.     Appoint the Receiver as the Trustee

34.     Finally, the bankruptcy court may appoint the receiver to serve as the trustee.[27] *In re Petters* is instructive.  The district court appointed a receiver at the request of the United States Attorney's office to control the personal assets of Tom Petters, who was incarcerated for running a massive scam involving a variety of public and private businesses.[28]  The receiver later put the fraudulent enterprise into Chapter 11 bankruptcy.  At the time of the bankruptcy, the debtors had no remaining management or decision makers.[29]  All of the decisions and actions on behalf of the debtors were made by the receiver, with the advice of bankruptcy counsel.[30]  The U.S. Trustee, concerned about the legal status of the receiver during the bankruptcy, sought to appoint the receiver to serve as trustee. [31]  A group of creditors objected to, among other things, the appointment of the receiver as the trustee, primarily asserting that the receiver was not disinterested within the meaning of the Bankruptcy Code.[32]  The bankruptcy court affirmed the appointment of the receiver as trustee, holding that the status of pre-petition receiver did not alone create a conflict of interest, nor did the receiver's duty to assist in the underlying fraud investigation.  The court also stated that appointing another third-party to be trustee "would entail a two-staged duplication of effort," including "significant extra transactional expense . . .

---

[27] *See Ritchie Special Credit Invs., Ltd. v. U.S. Trustee (In re Petters Co.)*, 620 F.3d 847, 853-54 (8th Cir. 2010) (appointing receiver to serve as trustee); *In re Stratesec, Inc.*, 324 B.R. 156, 158 (Bankr. D.C. 2004) (entering show cause order as to why the court should not order the U.S. Trustee to appoint the receiver as trustee).
[28] *In re Petters Co.*, 401 B.R. 391, 394 (D. Minn. 2009).
[29] *Id*. at 395.
[30] *Id*. at 394-95.
[31] *Id*. at 395.
[32] *Id*. at 405.

particularly if that trustee were to hire a second group of attorneys and financial analysts." [33] The Eighth Circuit affirmed the bankruptcy court's appointment of the receiver as trustee.[34]

## VI. CONCLUSION

35.     For the foregoing reasons, the Debtor and Receiver suggest, and hereby request, that the Court authorize the Receiver to act in the capacity as debtor in possession in this case or to authorize the appointment of the Receiver as Chapter 11 Trustee.  In the alternative, the Debtor and Receiver request the Court to enter an interim order authorizing the Receiver to take such action as is appropriate on behalf of the estate pending final determining of the issues herein.

WHEREFORE, the Debtor respectfully request that the Court grant the relief requested herein and sauch other and further relief as it deems just and proper.

Dated: August 29, 2018                              Respectfully Submitted,

                                                    CULHANE MEADOWS, PLLC


                                                    By:    /s/ Richard Grant
                                                           Richard G. Grant
                                                           Tex. Bar No. 08302650

                                                    The Crescent, Suite 700
                                                    100 Crescent Court
                                                    Dallas, Texas 75201
                                                    Telephone: 214-210-2929
                                                    Email: rgrant@culhanemeadows.com

                                                    PROPOSED ATTORNEYS FOR
                                                    DEBTOR IN POSSESSION

---

[33] *Id.* at. 413.
[34] *See Ritchie Special Credit Invs.*, 620 F.3d at 850.

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that he has transmitted a true and correct copy of the foregoing via the Court's Electronic Case Filing system to all persons participating therein on August 29, 2018.

/s/ Richard Grant
Richard G. Grant

**EXHIBIT A**

Cause No. DC-18-03705

| | | |
|---|---|---|
| MICHAEL MANTAS, | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | DALLAS COUNTY, TEXAS |
| | § | |
| JORDAN J. JOHNSON, JACKIE | § | |
| JOHNSON, AND DIVINE DINING, LLC, | § | |
| D/B/A TACO CASA, | § | |
| | § | 116th JUDICIAL DISTRICT |
| Defendants. | § | |

Cause No. DC-18-04074

| | | |
|---|---|---|
| JORDAN JOHNSON, | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | DALLAS COUNTY, TEXAS |
| | § | |
| DIVINE DINING, LLC and MICHAEL | § | |
| MANTAS A/K/A MICHAIL MANTAS, | § | |
| | § | |
| Defendants. | § | 116th JUDICIAL DISTRICT |

## AGREED ORDER APPOINTING RECEIVER

On this day, the Court considered Plaintiff Michael Mantas' request for the appointment of a receiver and Plaintiff Jordan Johnson's request for the appointment of a receiver. The Court has reviewed the papers filed in this matter and hereby finds and orders as follows:

IT IS HEREBY ORDERED AND ADJUDGED AS FOLLOWS:

1.   The Court finds that the appointment of a Receiver to operate Divine Dining, LLC and the Taco Casa located at 1311 West Airport Freeway, Irving, Texas 75062 (together, the "Business") as set forth in this Order, is proper for good cause shown and agreement of the parties;

AGREED ORDER APPOINTING RECIEVER                                            1

2.   Elizabeth C. Brandon, of the law firm of Barnes & Thornburg, LLC, whose address is 2100 McKinney Avenue, Suite 1250, Dallas, Texas 75201, possesses the necessary qualifications, is disinterested and not related to any party to this action, and is hereby appointed to serve without bond as receiver (the "Receiver") for the Business.

## DUTIES AND OBLIGATIONS OF RECEIVER

IT IS FURTHER ORDERED that the Receiver possesses the necessary qualifications and is a proper person to be, and is hereby, appointed the Receiver over and to the Business, and possesses the full power of a Receiver under Texas law.

IT IS FURTHER ORDERED that the Receiver shall be entitled to possession and control over all assets and liabilities of and used in the Business, including the possession, control, and operation of the Taco Casa referenced above (the "Receivership Property"), which is currently under the control of Jordan Johnson and Michael Mantas (the "Receivership Parties"), and the Receiver shall be entitled to exercise all powers granted herein.

IT IS FURTHER ORDERED that the Receiver shall have all powers, authorities, rights and privileges heretofore possessed by the officers, directors, managers and general and limited partners of the Business and the Receivership Property under applicable state and federal law, by the governing charters, by-laws, articles and/or agreements in addition to all powers and authority of a receiver at equity, and all powers conferred upon a receiver by the provisions of Chapter 64 of the Texas Civil Practices and Remedies Code. The Receiver is authorized, subject to control of this Court and the laws of Texas regarding Receivership, to perform any and all duties and responsibilities to take all actions necessary to preserve the value of the Business and to operate the Business pursuant to this Order.

**AGREED ORDER APPOINTING RECIEVER**                                                     2

IT IS FURTHER ORDERED that no person holding or claiming any position of any sort with the Receivership Parties shall possess any authority to act by or on behalf of the Business or the Receivership Property.

IT IS FURTHER ORDERED that subject to the specific provisions set forth herein, the Receiver shall have the following general powers and duties:

a. To generally operate the Business, including to continue all normal and routine operations of the business, take any and all actions necessary to operate the Business as a going concern which the Receiver deems necessary in her business judgment, including consulting with the current owners of the Business in connection with normal and routine business operations;

b. To take custody, control, and possession of and over all assets and records of the Business pursuant to this Order and to safeguard such assets and records. This include changing any all locks and other means of access to the assets of the Business, taking possessions and control of all assets as needed, books and records, cash or cash equivalents, accounts receivable, bank accounts, brokerage accounts, mutual funds, property - both real and personal, inventory, intellectual property, and any other asset of any kind owned by the Business. Further, this includes instituting and carrying on all legal proceedings for the property of the Business or the Receivership Property or to recover possession of the whole, or nay party thereof, preparing and filing any tax returns pertaining to the Business or the Receivership Property as may be required by law. All financial institutions are directed to immediately deliver such cash or cash equivalents to the Receiver upon the Receiver's request. Any financial institution or person that receives actual notice of this Order, by personal service, facsimile transmission, email, or otherwise, shall within three (3) business days of receipt provide the Receiver with a certified statement setting forth, with respect to each property or bank account or description of assets as of the close of business on the date of receipt of the notice;

c. In light of certain ongoing disagreements as between the equal owners of the Business, to engage in and any discussions as necessary to avoid any disruption of the operations of the Business and to maintain normal and routine operations of the Business, and if necessary to engage an independent and qualified third party to conduct a valuation of the Business;

d. Following the valuation described herein, to conduct and oversee the sale of all Receivership Property to either Michael Mantas or Jordan Johnson and their respective affiliated entities or, alternatively, if the Receiver determines that the sale of all Receivership Property to either Michael Mantas or Jordan Johnson and their respective affiliated entities is not feasible and/or fails to generate a

reasonable sale price, to conduct an open sale of all Receivership Property via auction. Such sale must be approved by this Court after hearing on the matter;

e. To finalize and cause all tax filings for the Business to be filed;

f. To oversee, if necessary, the marketing efforts of the Business, including but not limited to preparing a marketing plan and budget with the assistance of a marketing consultant of Receiver's choice, approving any future marketing plans, and approving any expenditure of marketing funds for the Business;

g. To have immediate access to any business premises of the Business, and immediate access to any other location where the Business has conducted business and where property or business records are likely to be located;

h. To investigate, conserve, hold, and manage all assets of the Business, and perform all acts necessary or advisable to preserve the value of those assets in an effort to prevent any irreparable loss, damage or injury to consumers or to creditors of the Business including, but not limited to, obtaining an accounting of the assets, and preventing transfer, withdrawal or misapplication of assets;

i. To choose, engage, and employ attorneys, accountants, appraisers, and other independent contractors and technical specialists (collectively, "Professionals"), as the Receiver deems advisable or necessary in the performance of duties and responsibilities under the authority granted by this Order; Notwithstanding the foregoing, the Receiver shall not engage any attorneys, accountants, and/or third parties who are currently, and/or have previously, represented Mr. Mantas, Mr. or Mrs. Johnson and/or the Business, except that the Receiver has the authority to allow Michael Cramer to continue his representation of the Business at the upcoming eviction hearing only (Cause No. CC-18-01615-B, County Court at Law No. 2) that is currently scheduled for April 18, 2018; provided that if the hearing is postponed, or concluded on April 18, 2018 at 9:00 a.m., the Receiver shall appoint another attorney who is not currently and/or has previously represented any of the Parties herein;

j. To conduct investigations and to issue subpoenas to obtain documents and records pertaining to, or in aid of the receivership, and conduct discovery in this action on behalf of the receivership estate;

k. To consent to the dissolution of the receivership in the event that the parties may compromise the claims that gave rise to the appointment of the Receiver, provided, however, that no such dissolution shall occur without a motion by either Michael Mantas or Jordan Johnson and service provided by Michael Mantas or Jordan Johnson upon all known creditors at least thirty days in advance of any such dissolution; and

l. To take all actions that the Receiver, in her sole discretion, deems necessary in the above-styled proceeding, including, but not limited to, seeking or assisting the

**AGREED ORDER APPOINTING RECIEVER**                                                  4

parties in seeking the consolidation of Cause No. DC-18-04074 into Cause No. DC-18-03705.

IT IS FURTHER ORDERED that the Receiver hereby holds, and is therefore empowered to waive, all privileges, including the attorney-client privilege, held by the Receivership Parties and/or the Business. The Receiver has a continuing duty to ensure that there are no conflicts of interest between the Receiver, her Retained Personnel (as that term is defined below), and the parties in this litigation.

## STAY OF LITIGATION

IT IS FURTHER ORDERED that, excluding the instant above-styled proceedings (Cause Nos. DC-18-03705 and DC-18-04074 pending in the 116th Judicial District Court in Dallas County), the pending proceeding in Dallas County Court at Law No. 1 to confirm an arbitration award between the Receivership Parties, and any proceeding expressly set forth herein, the following proceedings are stayed until further Order of this Court:

> All civil legal proceedings of any nature, including, but not limited to, bankruptcy proceedings, arbitration proceedings, foreclosure actions, default proceedings, or other actions of any nature involving: (a) the Receiver, in her capacity as Receiver; (b) any Receivership Property, wherever located; (c) the Business, including subsidiaries and partnerships; or, (d) any past or present officers, directors, managers, agents, or general or limited partners of the Business who have been sued for, or in connection with, any action taken by them while acting in such capacity of any nature, whether as plaintiff, defendant, third-party plaintiff, third-party defendant, or otherwise (such proceedings are hereinafter referred to as "Ancillary Proceedings").

IT IS FURTHER ORDERED that all legal proceedings in the eviction proceeding involving the Receivership Property in Cause No. CC-18-01615-B, in the Dallas County Court at Law No. 2 shall be stayed for a period of forty-five (45) days from the date of this Order. The parties to any and all other Ancillary Proceedings are enjoined from commencing or continuing any such legal proceeding, or from taking any action, in connection with any such proceeding, including, but not limited to, the issuance or employment of process. Further, as to a cause of

action accrued or accruing in favor of one or more of the parties in this proceeding against a third person or party, any applicable statute of limitation is tolled during the period in which this injunction against commencement of legal proceedings is in effect as to that cause of action. By way of further clarification and notwithstanding anything to the contrary herein, the Parties are not prohibited from continuing the litigations in the above-styled proceedings (Cause Nos. DC-18-03705 and DC-18-04074 pending in the 116th Judicial District Court in Dallas County).

## BANKRUPTCY FILING

IT IS FURTHER ORDERED that the Receiver may seek authorization of this Court to file voluntary petitions for relief under Title 11 of the United States Code (the "Bankruptcy Code") for any entity within the Business. If an entity within the Business is placed in bankruptcy proceedings, the Receiver may become, and may be empowered to operate each of the Receivership Property as, a debtor in possession. In such a situation, the Receiver shall have all of the powers and duties as provided a debtor in possession under the Bankruptcy Code to the exclusion of any other person or entity. As set forth herein, the Receiver is vested with management authority for the Business and may therefore file and manage a Chapter 11 petition.

IT IS FURTHER ORDERED that the provisions of this Section bar any person or entity, other than the Receiver, from placing the Business or any of the Receivership Property in bankruptcy proceedings.

## LIMITATION OF RECEIVER'S LIABILITY

IT IS FURTHER ORDERED that neither the Receiver nor any of Receiver's agents, agents, or attorneys shall have personal liability in connection with any liabilities, obligations, liens, or amounts owed to any of Business's creditors or equity holders arising from or relating to

Receiver's duties as Receiver and any claims against the Receiver shall be limited to the Receivership Property.

IT IS FURTHER ORDERED that the Receiver and her agents, acting within scope of such agency ("Retained Personnel") are entitled to rely on all outstanding rules of law and Orders of this Court and shall not be liable to anyone for their own good faith compliance with any order, rule, law, judgment, or decree. In no event shall the Receiver or Retained Personnel be liable to anyone for their good faith compliance with their duties and responsibilities as Receiver or Retained Personnel.

IT IS FURTHER ORDERED that except for an act of gross negligence, the Receiver and the Professionals shall not be liable for any loss or damage incurred by the Business, or any of the Receivership Parties, their officers, agents, servants, employees and attorneys or any other person, by reason of any act performed or omitted to be performed by the Receiver and the Professionals in connection with the discharge of her duties and responsibilities. Additionally, in the event of a discharge of the Receiver either by dissolution of the receivership or order of this Court, the Receiver and her Professionals shall have no further duty whatsoever.

IT IS FURTHER ORDERED that this Court shall retain jurisdiction over any action filed against the Receiver or Retained Personnel based upon acts or omissions committed in their representative capacities.

IT IS FURTHER ORDERED that in the event the Receiver decides to resign, the Receiver shall first give written notice to the counsel of record for the Receivership Parties and the Court of her intention, and the resignation shall not be effective until the Court appoints a successor. The Receiver shall then follow such instructions as the Court may provide.

## PAYMENT OF PROFESSIONAL FEES

IT IS FURTHER ORDERED that each Receiver and her professionals, including counsel to the Receiver, which counsel shall be the law firm of Barnes & Thornburg, LLC, and attorney Victor D. Vital, whose address is 2100 McKinney, Suite 1250, Dallas, Texas 75201, and financial advisors if employed at a later date, are entitled to reasonable compensation for the performance of duties pursuant to this Order and for the cost of actual out-of-pocket expenses incurred by them, which compensation shall be derived exclusively from the revenues and/or assets of the Business and the Receiver and her professionals shall have a first and absolute administrative expense lien to such payment.

IT IS FURTHER ORDERED that the professional fees of the Receiver and her Professionals shall be paid on a bi-weekly basis and shall be as follows: (a) Receiver – Elizabeth Brandon, $450.00 per hour; (b) Victor D. Vital, counsel $515.00 per hour and any other attorneys at Barnes & Thornburg as needed which may be assisting Mr. Vital at billing rates ranging between $250.00 per hour to $450.00 per hour. No retainer shall be by the Business to the Receiver or her Professionals without prior order of this Court.

IT IS FURTHER ORDERED that the Receiver and her professionals shall file with the Court and serve on the parties a fee statement (such service to the parties to be by email) with regard to any request for compensation and expenses on a bi-weekly basis. If no party raises an issue with respect to the fee statement within three (3) business days of such failing and service, the Business shall pay such professional the requested fees and expenses.

IT IS FURTHER ORDERED that the Receiver need not obtain Court approval prior to the disbursement of Receivership Funds for expenses in the ordinary course of the administration

and operation of the receivership. Further, prior Court approval is not required for payments of applicable federal, state or local taxes.

## COOPERATION WITH RECEIVER AND INJUNCTION
## AGAINST INTERFERENCE WITH RECEIVER

IT IS FURTHER ORDERED that the Receivership Parties and all other persons or entities served with a copy of this Order shall fully and immediately cooperate with and assist the Receiver in all aspects, including transition of management of the Business and the Receivership Property. This immediate cooperation and assistance shall include, but not be limited to, providing any information to the Receiver that the Receiver deems necessary to exercising the authority and discharging the responsibilities of the Receiver under this Order, including such information necessary to complete tax returns; providing any password required to access any computer, electronic account, or digital file or telephonic data in any medium; turning over all files and records including those in possession or control of attorneys or accountants.

IT IS FURTHER ORDERED that no lien, claim or other security interest in any property affected by this receivership will in any manner be affected by this Order. Any party's failure to oppose the appointment of Receiver, any party's consent to the appointment or any party's procurement of the appointment will not constitute waiver of any lien, claim or right.

IT IS FURTHER ORDERED that any person or any agent of any person with actual notice of this Order shall not interfere with, or direct another to interfere with, any property in the control of Receiver or subject to this Order, nor interfere with Receiver in the carrying out of any duty under this Order.

IT IS FURTHER ORDERED that all third parties (including but not limited to financial institutions and accountants) in possession of Receivership Property (wherever located, but only to the extent that such items are in their respective direct or indirect possession, custody, or

control) and liabilities are hereby ordered to turn over such assets to Receiver, if requested by the Receiver, within two (2) business days of receipt of a copy of this Order, including:

a. All keys, passwords, security codes, and all other means of access to Receivership Property;

b. All records pertaining to Receivership Property, and liabilities, including, for example, all lists, order, unexpired and expired leases, agreements, correspondence, permits, licenses, and notices;

c. Petty cash, if any;

d. A current aged accounts receivables or delinquency report;

e. A current list of all aged payables;

f. A copy of all records or other documents relating to operating and capital expenses, costs, and fees for the Receivership Property and the Business;

g. A list of all vendors' accounts used currently, and/or past vendor accounts of the Business even though not currently used;

h. Records from vendors and third parties of the Business which reflect a rebate or discount;

i. Records reflecting existing warranties on any items and/or equipment associated with the Business;

j. Existing contracts pertaining to the Business;

k. Copies of any and all third-party audits of the Business, if any;

l. Insurance policies in existence for any Party and/or property associated with or used by the Business;

m. All documents, books, records and computer files, computer equipment, software, management files, equipment, inventory, credit-card machines, furniture, supplies, and all passwords needed to access such software and computer files, and email accounts used in the Business or related to Receivership Property, including all income, real and personal, trust-fund, sales-tax reports or returns; and

n. Any other records pertaining to the Receivership Property, liabilities, and/or Business as may be requested by the Receiver.

IT IS FURTHER ORDERED that this receivership will continue in effect until further order of this Court, or until the Court no longer retains jurisdiction over these proceedings.

AGREED ORDER APPOINTING RECIEVER

10

IT IS FURTHER ORDERED that all persons in possession, custody, or direct or indirect control of Receivership Property, each defendant and equity owner of the Business, and all persons receiving notice of this Order by personal service, facsimile or otherwise ("Enjoined Parties"), are hereby restrained and enjoined from directly or indirectly taking any action or causing any action to be taken, without the express written agreement of the Receiver, which would:

a. Interfere with the Receiver's efforts to take control, possession, or management of any Receivership Property; such prohibited actions include but are not limited to, using self-help or executing or issuing or causing the execution or issuance of any court attachment, subpoena, replevin, execution, or other process for the purpose of impounding or taking possession of or interfering with or creating or enforcing a lien upon any Receivership Property;

b. Hinder, obstruct or otherwise interfere with the Receiver in the performance of her duties; such prohibited actions include but are not limited to, concealing, destroying or altering records or information;

c. Dissipate or otherwise diminish the value of any Receivership Property; disposing, transferring, exchanging, assigning or in any way conveying any Receivership Property, enforcing judgments, assessments or claims against any Receivership Property or any of the Receivership Parties, attempting to modify, cancel, terminate, call, extinguish, revoke or accelerate (the due date), of any lease, loan, mortgage, indebtedness, security agreement or other agreement executed by any of the Receivership Parties or which otherwise affects any Receivership Property; or,

d. Interfere with or harass the Receiver, or interfere in any manner with the exclusive jurisdiction of this Court over the Receivership Estates; or

e. Filing a petition for relief under the Bankruptcy Code or filing suit against the Receiver, Receiver's agents or professionals, or taking any action against the Business without an order of this Court permitting such a suit or action.

IT IS FURTHER ORDERED that the Receiver shall promptly notify the Court and counsel of any failure or apparent failure of any person or entity to comply in any way with the terms of this Order.

IT IS FURTHER ORDERED that nothing in this Order is intended to impair, waive, abrogate, or otherwise affect any work-product, privilege, or other applicable protective doctrine for any document or subject matter disclosed in response to this Order. Any inadvertent disclosure of any document that is subject to a claim that the document should have been withheld from disclosure as privileged materials does NOT waive any privilege, work-product, or other applicable protective doctrine for the document or for the subject matter of the inadvertently disclosed document. Any such document is considered privileged and must be returned to the disclosing party or destroyed within ten (10) days of its discovery.

## RECOMMENDATIONS AND REPORTS

IT IS FURTHER ORDERED that the Receiver is authorized, empowered and directed to develop a plan for the fair, reasonable, and efficient sale or disposition of all Receivership Property.

IT IS FURTHER ORDERED that within thirty (30) days of the entry date of this Order, the Receiver shall file a status report with the Court ("Initial Status Report"). The Initial Status Report will include a summary of receivership activities to date. It will also include a proposed plan for administering the receivership going forward, as well as a proposed deadline by which the Receiver will submit a plan to govern the sale of the Business and the Receivership Property. Thereafter, the Receiver shall periodically file and serve a status report of receivership activities to date. On the request of the Court, the Receiver shall provide the Court with any documentation that the Court deems necessary.

SIGNED this 9th day of _April_, 2018

_____
PRESIDING JUDGE
116th JUDICIAL DISTRICT COURT OF
DALLAS COUNTY, TEXAS

AGREED ORDER APPOINTING RECIEVER

12

**APPROVED AS TO FORM AND SUBSTANCE**

By:   */s/ Michael P. Kelly*
LAW OFFICE OF MICHAEL P. KELLY
Michael P. Kelly
  State Bar No. 11227280
  mptkelly@sbcglobal.net.com
P.O. Box 150589
Dallas, Texas 75315-0589
Ph.: 214.821.7255
Fax: 214.821.7251

*Counsel for Michael Mantas*


By:   */s/ Craig Laird*
PAUL CRAIG LAIRD LAW FIRM, PLLC
Paul Craig Laird II
  State Bar No. 11795420
  PCL@LAIRD.LAWYER
800 West Airport Freeway
Suite 860, LB 6015
Irving, Texas 75062
Ph.: 972.554.0929
Fax: 214. 260.4935

*Counsel for Jordan Johnson*
*and Jackie Johnson*

**EXHIBIT B**

CAUSE NO. DC-18-03705

| | | |
|---|---|---|
| MICHAEL MANTAS, | ) | IN THE DISTRICT COURT OF |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | DALLAS COUNTY, TEXAS |
| | ) | |
| JORDAN J. JOHNSON, JACKIE | ) | |
| JOHNSON, AND DIVINE DINING, LLC, | ) | |
| D/B/A TACO CASA, | ) | |
| | ) | |
| Defendants. | ) | 116TH JUDICIAL DISTRICT |
| | ) | |

## ORDER

Having considered Receiver's Supplemental Recommendation for Authority to File Chapter 11 Bankruptcy, dated August 9, 2018 ("Recommendation"), and after an opportunity for input from the parties, as well as Adelphi Group, Ltd. (Landlord), ~~and Roy Upshaw (Franchisor)~~, the Court approves the Recommendation and authorizes Receiver, pursuant to the Agreed Order Appointing Receiver, dated April 9, 2018 ("Order"), to engage the law firm Culhane Meadows as general bankruptcy counsel for the Business and, in her discretion, cause to be filed a voluntary petition for relief under Title 11 of the United States Code ("Bankruptcy Code") in a court of proper jurisdiction and proceed accordingly. It is therefore:

ORDERED that Receiver is authorized to engage the law firm Culhane Meadows as general bankruptcy counsel for the Business ("Bankruptcy Counsel") along the terms proposed in the Recommendation, and, in her discretion, cause to be filed a voluntary petition for relief under the Bankruptcy Code (whether under Chapter 7, 11, or otherwise) and proceed accordingly in the exercise of her authority arising under the Order;

ORDERED that Receiver is authorized, at her discretion, to take the actions and adopt the resolutions outlined in the attached Resolution of the Receiver of Divine Dining, LLC d/b/a Taco Casa Authorizing Bankruptcy Filing;

ORDERED that Receiver should endeavor to take such actions within seven (7) days after entry of this Order; and

ORDERED that Receiver is authorized to take any other actions she deems appropriate pursuant to the terms of the Order.

It is so ordered.

Dated: _August 14_, 2018

_____
JUDGE PRESIDING

## RESOLUTION OF THE RECEIVER OF
## DIVINE DINING, LLC D/B/A TACO CASA
## AUTHORIZING CHAPTER 11 BANKRUPTCY FILING

Dated as of August ____, 2018.

WHEREAS, Elizabeth C. Brandon, of the law firm of Barnes & Thornburg LLP, was appointed Receiver (the "Receiver") of Divine Dining, LLC d/b/a Taco Casa (the "Company") in *Michael Mantas v. Jordan J. Johnson, et al*, Cause No. 18-03705/18-04074, 116th District Court, Dallas County, Texas (the "Receivership Action"), pursuant to that certain Agreed Order Appointing Receiver, dated April 9, 2018 ("Order"), and hereby take the following actions and adopt the following resolutions, subject to approval by the Court (the "Receivership Court") in the Receivership Action:

### Chapter 11 Filing

WHEREAS, the Receiver has considered presentations by the management and the financial and legal advisors of the Company regarding the liabilities and liquidity situation of the Company, the strategic alternatives available to it, and the effect of the foregoing on the Company's business; and

WHEREAS, the Receiver has had the opportunity to consult with her financial and legal advisors, the equity owners and their counsel, and other interested parties, and fully consider each of the strategic alternatives available to the Company.

NOW, THEREFORE, BE IT,

RESOLVED, that in the judgment of the Receiver, it is desirable and in the best interests of the Company (including a consideration of its creditors and other parties in interest) that the Company shall be, and hereby is, authorized to file, or cause to be filed, a voluntary petition for relief (the "Bankruptcy Case") under the provisions of Title 11 of the United States Code (the "Bankruptcy Code"), whether under Chapter 7, 11, or otherwise, in a court of proper jurisdiction and/or any other petition for relief or recognition or other order that may be desirable under applicable law in the United States;

RESOLVED, that Receiver or any other persons authorized by her (collectively, the "Authorized Signatories"), acting alone or with one or more other Authorized Signatories be, and hereby are, authorized, empowered and directed to execute and file on behalf of the Company all petitions, schedules, lists and other motions, papers, or documents, and to take any and all action that they deem necessary or proper to obtain such relief, including, without limitation, any action necessary to maintain the ordinary course operation of the Company's business;

### Retention of Professionals

RESOLVED, that each of the Authorized Signatories be, and hereby are, authorized and directed to employ the law firm of Culhane Meadows, PLLC (together, "Bankruptcy Counsel") as general bankruptcy counsel to represent and assist the Company in carrying out its duties under the Bankruptcy Code, and to take any and all actions to advance the Company's rights and

obligations, including filing any motions, objections, replies, applications or pleadings; and in connection therewith, each of the Authorized Signatories, with power of delegation, is hereby authorized and directed to execute appropriate retention agreements, pay appropriate retainers, and to cause to be filed an appropriate application for authority to retain the services of Bankruptcy Counsel;

RESOLVED, that each of the Authorized Signatories be, and hereby are, authorized and directed to employ the firm Elementary Business ("Restructuring Advisor"), as restructuring advisor, and to appoint a designated person to serve as Chief Restructuring Officer of the Company to represent and assist the Company in carrying out their duties under the Bankruptcy Code, and to take any and all actions to advance the Company's rights and obligations; and in connection therewith, each of the Authorized Signatories, with power of delegation, is hereby authorized and directed to execute appropriate retention agreements, pay appropriate retainers, and to cause to be filed an appropriate application for authority to retain the services of Restructuring Advisor and to appoint a designated Chief Restructuring Officer of the Company;

RESOLVED, that each of the Authorized Signatories be, and hereby are, authorized and directed to employ and retain any other professional advisors to represent and assist the Company in carrying out their duties under the Bankruptcy Code as such Authorized Signatory deems necessary, proper or desirable in connection with the Company's Bankruptcy Case, with a view to the successful prosecution of such case; and in connection therewith, each of the Authorized Signatories, with power of delegation, is hereby authorized and directed to execute appropriate retention agreements, pay appropriate retainers and fees, and to cause to be filed appropriate applications for authority to retain the services of any such other professional advisors, in each case on such terms as such Authorized Signatory deems necessary, proper or desirable in connection with the Company's Bankruptcy Case, with a view to the successful prosecution of such case;

RESOLVED, that each of the Authorized Signatories be, and hereby are, with power of delegation, authorized, empowered and directed to execute and file all petitions, schedules, motions, lists, applications, pleadings, and other papers and, in connection therewith, to employ and retain all assistance from legal counsel, accountants, financial advisors, and other professional advisors, and to take and perform any and all further acts and deeds that such Authorized Signatory deems necessary, proper, or desirable in connection with the Company's Bankruptcy Case, with a view to the successful prosecution of such case;

## General

RESOLVED, that in addition to the specific authorizations heretofore conferred upon the Authorized Signatories, each of the Authorized Signatories (and their designees and delegates) be, and hereby are, authorized and empowered, in the name of and on behalf of the Company, to do such further acts and things as any Authorized Signatory or such other duly authorized person shall deem necessary or appropriate in connection with, or to carry out the actions contemplated by, the foregoing resolutions, including to do and perform (or cause to be done and performed), in the name and on behalf of the Company, all such acts and to sign, make, execute, affix common seal on, deliver, issue or file (or cause to be signed, made, executed, delivered, issued or filed) with any person including any governmental authority or agency, all such agreements,

resolutions, deeds, instruments, letters, certificates, proxies, notices, certificates, acknowledgements, authorizations, consents, releases, waivers and other documents (whether of like nature or not) (the "Ancillary Documents") and all amendments and modifications to any such Ancillary Documents, and to pay, or cause to be paid, all such payments, as any Authorized Signatory may deem necessary or advisable in order to carry out the intent of the foregoing resolutions, the authority for the doing of any such acts and things and the signing, making, execution, delivery, issue and filing of such of the foregoing to be conclusively evidenced thereby; and

RESOLVED, that all acts relating to the matters contemplated by the foregoing resolutions done in the name of and on behalf of the Company, which would have been approved by the foregoing resolutions except that such acts were taken before the adoption of these resolutions, are hereby in all respects approved and ratified as the true acts and deeds of the Company with the same force and effect as if each such act had been specifically authorized in advance by a valid resolution of the Receiver.