Joe E. Marshall
Texas Bar No. 13031100
MARSHALL LAW
3131 McKinney Ave., Ste. 600
Dallas, Texas 75204
Telephone: (214) 579-9173
jmarshall@marshalllaw.net

**ATTORNEY FOR
JASON RAE, CHAPTER 11 TRUSTEE**

## IN THE UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: § | | |
| § | Case No. 18-32805-SGJ-11 | |
| **DIVINE DINING, LLC,** § | | |
| § | Chapter 11 | |
| DEBTOR. § | | |
| § | Hearing Date: January 7, 2019 | |
| § | Hearing Time: 1:30 p.m. | |
| § | | |

**MOTION TO APPROVE (A) SALE AND ASSIGNMENT PROCEDURES AND BID PROTECTIONS IN CONNECTION WITH SALE OF ASSETS AND ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (B) NOTICE PROCEDURES AND SETTING DATE FOR AUCTION AND SALE HEARING, AND (C) THE SALE OF ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS AND INTERESTS, AND (D) RELATED RELIEF**

**TO THE HONORABLE STACEY G. C. JERNIGAN, U.S. BANKRUPTCY JUDGE:**

COMES NOW Jason Rae, the duly appointed Chapter 11 trustee (the "**Trustee**") in the above-captioned case (the "**Bankruptcy Case**"), and files this *Motion to Approve (A) Sale and Assignment Procedures and Bid Protections in Connection with Sale of Assets and Assumption and Assignment of Executory Contracts and Unexpired Leases, (B) Notice Procedures and Setting Date for Auction and Sale Hearing, (C) the Sale of Assets Free and Clear of all Liens, Claims and Interests, and (D) Related Relief* (the "**Sale Motion**").

Through this Sale Motion, the Trustee initially seeks an interim order approving (i) the

procedures for the bidding on, and sale of, all or substantially all of the estate's assets and the assumption and assignment of unexpired leases and executory contracts, and (ii) scheduling the auction and a final sale hearing ("**Sale Hearing**") for approval of the sale. At the Sale Hearing, the Trustee is seeking a final order on the Sale Motion authorizing the Trustee to sell the Divine Dining Assets (defined hereinbelow) to the highest bidder free and clear of all liens, claims, interests and encumbrances and the assumption and assignment of all designated executory contracts. In support of the Motion, the Trustee would respectfully show the following.

### I. JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334 and 11 U.S.C. §§ 363 and 365. Consideration of this action is a core proceeding pursuant to 28 U.S.C. § 157(b).

### II. FACTUAL AND PROCEDURAL BACKGROUND

2. On August 27, 2018 (the "**Petition Date**"), Divine Dining, LLC (the "**Debtor**")[1] commenced this Bankruptcy Case by filing a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. § 101, *et seq*. (the "**Bankruptcy Code**").

3. On August 31, 2018, the Court entered its Order for Appointment of a Chapter 11 Trustee in the Bankruptcy Case. The U.S. Trustee thereafter appointed Jason Rae to act in that capacity and the Court approved the appointment.

4. The Trustee is authorized to manage the Debtor's assets and operations and to sell the Divine Dining Assets and assume and assign all executory contracts related thereto subject to this Court's approval.

5. The Debtor's principal place of business is located at 1311 W. Airport Freeway,

---

[1] The voluntary petition was filed by the receiver appointed in Cause No. 18-03705/18-04074 by agreement among the Debtor's owners, landlord and franchisor.

Irving, Texas, subject to a nonresidential real property lease dated November 30, 2011 between the Debtor, as tenant, and Adelphi Group, Ltd., a Texas limited partnership, as landlord (the "**Landlord**")(the lease, together with all amendments and addendum thereto are collectively referred to as the "**Lease**"). The Debtor is also a party to that certain Franchise Agreement dated October 4, 2011 ("**Franchise Agreement**") under which the business is operated as a Taco Casa franchisee for Mr. Roy Upshaw (the "**Franchisor**"). In addition to its rights under the Franchise Agreement and Lease, the Trustee is in possession, and the estate owns, certain inventory, furniture and equipment and related personal property that is utilized in the operation of the business, as well as general intangibles, including accounts receivable, customer lists, and business goodwill (collectively, all such assets of the estate except for the "Excluded Assets," shall constitute the "**Divine Dining Assets**").

6.     The assets which are not being offered for sale during this process include (i) cash on hand at the time of closing, (ii) accounts receivable as of the date of closing only to the extent such accounts are comprised of merchant credit card receipts necessary to cover the amount of accrued and unpaid expenses for the business operations and the costs of administration for the Bankruptcy Case as of the closing date, (iii) estate claims and causes of action against third parties including claims and actions under Chapter 5 of the Bankruptcy Code, and (iv) any and all executory contracts or leases not expressly assumed or assigned or rejected as of the date of Closing (the "**Excluded Assets**").

7.     Prior to the filing of the Bankruptcy Case, the Debtor, acting by and through the Receiver, entered into that certain Asset Purchase Agreement dated August 27, 2018 with North Texas Taco Casa, LLC ("**Purchaser**"), which provided for the sale of the Divine Dining Assets and assignment of certain executory contracts through a sale in the Bankruptcy Case pursuant to

Bankruptcy Code Sections 363 and 365.  According to the Receiver, she contacted the Franchisor, the prior owners of the Debtor, the Landlord and numerous other franchisees of Taco Casa restaurants in an attempt to identify potential purchasers of the Divine Dining Assets who would have the financial wherewithal and realistically qualify as a franchisee.  In connection with those efforts, the Purchaser was the only party at that point willing to make an offer and negotiate with the Receiver.

8.  Subsequent to his appointment, the Trustee negotiated with Purchaser to secure the proposed purchase of the Divine Dining Assets on terms providing for more clarity on the sale and a more favorable outcome for all parties and memorialized such terms in an Amendment to the Purchase Agreement dated November 1, 2018 (the original Asset Purchase Agreement with Purchaser, together with the foregoing Amendment to the Purchase Agreement are collectively referred to herein as the "**Purchase Agreement**").  The Purchaser is not an insider of the Debtor and has no prior relationship with the Trustee.  The Trustee and Purchaser engaged in arms-length negotiations and the proposed sale under the Purchaser Agreement is a good faith offer for the Divine Dining Assets in the opinion of the Trustee based on his business judgment.

9.  The Trustee believes, in his reasonable business judgment that an immediate sale to the Purchaser pursuant to the Purchase Agreement, or to a qualified bidder on more favorable terms, is in the best interest of the Estate and its creditors.

### III.  RELIEF REQUESTED

10.  Pursuant to sections 105(a), 363, 365, 503, and 507 of the Bankruptcy Code, and Rules 2002, 6004, 6006, and 9007 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Trustee is initially requesting approval of procedures to govern (A) an expeditious and efficient bidding, auction and sale process for the Divine Dining Assets, and (B) the assumption and assignment of the Franchise Agreement and Lease and any other relevant

executory contracts and unexpired leases designated as part of the sale (collectively, the "**Restaurant Contracts**") to the successful bidder and on terms approved by the Court, including, without limitation, the fixing of required cure amounts for the Restaurant Contracts in accordance with Section 365(b) of the Bankruptcy Code. The Trustee believes that the procedures proposed herein will maximize the value of the Divine Dining Assets and ensure an effective and efficient process that will culminate in the sale of all, or substantially all, of the Divine Dining Assets and the assumption and assignment of the Restaurant Contracts (the "**Sale**").  At the closing of the Sale, all net sale proceeds shall be deposited into an account maintained by the Trustee for the benefit of the estate, and all valid prepetition liens and/or security interests against the Divine Dining Assets, if any, shall attach to such sale proceeds in the same priority as they attached against the Divine Dining Assets with the exception of any valid and enforceable liens of the Landlord against personal property fixtures and secured debt assumed by the Purchaser and identified as part of the Sale. The sale proceeds shall only be distributed upon further order of the Bankruptcy Court except for funds required to pay the normal and necessary costs incurred by the Trustee in the operation of any remaining assets for the estate and administration of the Bankruptcy Case.

11. For purposes of the initial hearing, the Trustee requests that the Court enter an Order approving (a) the form and manner of the notice of the sale in the form attached hereto as **Exhibit "A"** (the "**Sale Notice**"), which includes the respective dates, times and places for an auction of the Divine Dining Assets (the "**Auction**") and the Sale Hearing, and (b) the details, requirements and deadlines related to the qualification of bids and bidders, the assumption and assignment of the Restaurant Contracts, and the procedures for the bidding and auction for the sale of the Divine Dining Assets, substantially in the form attached hereto as **Exhibit "A-1"** (the "**Sale Procedures**").

**A.      Sale and Contract Assignment Notice**

12.     Bankruptcy Rule 2002(a) provides, in relevant part, that all creditors must be given at least twenty-one (21) days' notice by mail of a proposed use, sale or lease of property of the estate other than in the ordinary course of business. Further, Bankruptcy Rule 2002(c) sets forth that such notices must include the time and place of any sale, the terms and conditions of such sale, and the time fixed for filing objections.

13.     The Sale Notice (a) contains the type of information required under Bankruptcy Rule 2002; (b) includes the applicable procedures for the Sale; and (c) is reasonably calculated to provide due, adequate and timely notice to all creditors and interested parties of (i) the auction of the Divine Dining Assets, (ii) the Sale Procedures, (iii) the terms and authority under which the Trustee can assume and assign the Restaurant Contracts, (iv) the deadlines to object to the Sale and assumption and assignment of the Restaurant Contracts, and (v) the date and time of the Sale Hearing.  Accordingly, the Trustee requests that this Court approve the form and content of the Sale Notice.

14.     Within three (3) business days after the Court enters an Order approving the Sale Procedures under this Motion, the Trustee shall serve the Sale Notice by (a) first class United States mail, postage prepaid on (i) the parties identified upon the Master Creditor Matrix for this Bankruptcy Case (who do not receive electronic notice) at the addresses set forth therein, (ii) the parties that have filed a proof of claim or Notice of Appearance in this Bankruptcy Case at the addresses set forth in the respective filing, and (iii) any other parties who have expressed an interest in acquiring any of the Divine Dining Assets; and (b) the Court's ECF notification system upon those parties receiving electronic notice by such system. Service of such Sale Notice is proper, due, timely, good, and sufficient notice of, among other things, the Sale Procedures, the Auction,

the Assumption and Assignment of the Restaurant Contracts, the proposed Sale, and the procedure and requirements for objecting thereto.

15. In accordance with Bankruptcy Rules 2002 and 6006, the Trustee must provide notice of (a) the potential assumption and assignment of executory contracts and unexpired leases, (b) the maximum amount that the Trustee may cause a potential purchaser to pay to cure all defaults, if any, and to pay all losses that have resulted from defaults, under executory contracts and unexpired leases that the Trustee proposes to assume and assign (collectively, the "**Cure Amounts**"), and (c) the deadline to file objections to such assumption and assignment, the maximum Cure Amounts related to existing defaults and the ability of the purchaser to provide adequate assurance of the future performance.

16. Pursuant to the Purchase Agreement, the Trustee is proposing to assume and assign the Lease and Franchise Agreement to the Purchaser as part of the Sale. At this time, the Trustee is not aware of any other executory contracts that will be assumed and assigned to the Purchaser or any party offering a higher and better price for the Divine Dining Assets. If potential purchasers identify other executory contracts, further notice will be provided to the parties to those contracts with the proposed cure amounts and time periods for objections. The Lease and Franchise Agreement, along with the maximum Cure Amounts required to be paid by any purchaser, are set forth in the schedule attached hereto as **Exhibit "B."**

B. **Objections to the Sale and Assumption and Assignment of the Restaurant Contracts**

17. The Trustee requests that the following procedures be approved with respect to the Sale, assumption and assignment of the Restaurant Contracts and the relief related thereto:

18. Objections, if any, to the Sale and/or the proposed assumption and assignment of the Restaurant Contracts, including but not limited to objections relating to any Cure Amounts

and/or adequate assurances of future performance, must (i) be in writing, state with specificity the nature of such objection, (iii) if concerning a Cure Amount, set forth a specific default in the Restaurant Contract and claim a specific monetary amount that differs from the Cure Amount (if any) specified by the Trustee in **Exhibit B** hereto (with appropriate documentation in support thereof), (iv) comply with the Federal Rules of Bankruptcy Procedure, and (v) be filed with this Court on or before the objection deadlines stated in the Sale Notice and Sale Procedures (the "**Objection Deadlines**") and served upon the following parties (collectively, the "**Notice Parties**"):

　　i. Jason Rae, Chapter 11 Trustee
　　　Lain, Faulkner & Co, P.C.
　　　400 N. St. Paul, Suite 600
　　　Dallas, TX 75201
　　　jrae@lainfaulkner.com

　　ii. Joe E. Marshall
　　　Marshall Law
　　　3131 McKinney Ave, Suite 600
　　　Dallas, TX 75204
　　　jmarshall@marshalllaw.net

　　iii. Office of the United States Trustee
　　　c/o Stephen McKitt
　　　1100 Commerce Street, Room 976
　　　Dallas, TX  75242
　　　Stephen.McKitt@usdoj.gov

　　iv. Mark Stromberg
　　　Stromberg Strock
　　　8750 North Central Expressway
　　　Suite 625
　　　Dallas, TX 75231
　　　Mark@StrombergStrock.com

　　19.　The Trustee requests authorization to supplement the list of contracts and cure amounts on **Exhibit B** prior to the Sale Hearing if any additional contract is designated by a proposed purchaser for assumption and assignment as a condition to the Sale.  If the Trustee is

required to supplement the schedule, an additional notice will be provided to those contract parties and the Trustee shall use commercially reasonable efforts to effectuate the assumption and assignment of such Restaurant Contract in accordance with the Bankruptcy Code and Bankruptcy Rules or request additional relief from the Bankruptcy Court to establish any required expedited schedule.

20.     The sufficiency of the notice proposed hereunder supports a finding and determination from this Court that any person failing to timely file an objection to the Sale and/or the assumption and assignment of any Restaurant Contract (including the establishment of the maximum Cure Amount and the authority to assign the contract over any contractually required consent or other restriction) will be deemed to have consented to the Sale and assumption and assignment of the Restaurant Contracts in all respects and shall be forever barred from objecting to the approval or closing of the Sale, including the vesting or transferring of the Divine Dining Assets free and clear of any and all liens, claims, encumbrances and other interests except as otherwise set forth in the Order approving the Sale or the approved asset purchase agreement.

21.     Where a counterparty to a Restaurant Contract files a timely objection asserting a higher cure amount than the maximum Cure Amount set forth in **Exhibit B** hereto, and the parties are unable to consensually resolve the dispute, the amount to be paid with respect to such objection will be determined at a separate hearing prior to the Sale Hearing or such other date and time as may be fixed by this Court. All other objections to the proposed assumption and assignment of the Restaurant Contracts will be heard at the Sale Hearing.

22.     The combination of this Sale Motion, the Sale Notice and the Sale Procedures (a) contains the type of information required under Bankruptcy Rule 6006 that is currently known to the Trustee, and (b) is reasonably calculated to provide due, adequate and timely notice to all

interested parties of (i) the Sale and the transfer of the Divine Dining Assets free and clear of all liens, claims, interests and encumbrances, (ii) the assumption and assignment of the Restaurant Contracts, (iii) the maximum amount and manner offered to satisfy the Cure Amounts, and (iv) the deadline to file objections to the Sale, the assumption and assignment of the Restaurant Contracts, the maximum Cure Amounts, and/or the satisfaction of the requirements for adequate assurance of future performance.

C.  **Stalking Horse Bid Protections and Sales Procedures**

23. Pursuant to Bankruptcy Rule 6004(f)(1), sales of property outside the ordinary course of business may be by private sale or auction. The Trustee has received an offer from Purchaser that it wishes to accept as a "stalking horse" bid and proposes to designate Purchaser as the "Stalking Horse Bidder". The proposed bid is reflected in the Purchase Agreement attached hereto as **Exhibit "A-2"**. The Purchaser has no prior interest in the Debtor and, based on the Trustee's information and belief, has negotiated and submitted its offer under the Purchase Agreement in good faith. The Purchaser has further demonstrated its commitment to proceed with the Sale by submitting a $25,000.00 deposit and executing the Purchase Agreement on terms acceptable to the Trustee. Additionally, as an existing approved franchisee for other Taco Casa locations, Purchaser has demonstrated its ability to complete and close the sale on the terms set forth in the Purchase Agreement.

24. The Trustee believes that good cause exists to expose the Divine Dining Assets to sale at auction to test the market value of the consideration under the Purchase Agreement. An auction conducted substantially in accordance with the Sale Procedures will enable the Trustee to obtain the highest and best offer for the Divine Dining Assets, thereby maximizing their value for the benefit of the bankruptcy estate. The Trustee believes that the Sale Procedures are designed to

allow any other prospective bidder for the Divine Dining Assets to submit competitive bids and participate in the auction and sale process. In that regard, The Trustee believes that the Purchase Agreement entered into with the Purchaser enhances the success of the auction by setting a minimum price for competing bids and providing additional certainty of closing ahead of an auction. As a result, the Trustee requests authority to pay to such Stalking Horse Bidder the amount of $25,000.00 (the "**Break-Up Fee**") if the conditions set forth in the Sales Procedures are satisfied. The Trustee proposes that the Break-Up Fee constitutes an administrative expense claim against the estate under section 503(b) of the Bankruptcy Code. The Break-Up Fee would be an actual and necessary cost of preserving the bankruptcy estate and would, in the Trustee's view, be commensurate to the real and substantial benefit conferred upon the estate by such Stalking Horse Bidder. The Break-Up Fee is also reasonable and appropriate considering, among other things, the (i) purchase price and nature of the Sale and comparable transactions, (ii) substantial efforts that have been and are likely to be expended by the Stalking Horse Bidder, (iii) likely benefits the Stalking Horse Bidder will provide to the estate, its creditors, and other parties in interest, and (iv) its necessity to induce the Stalking Horse Bidder to commit to a Sale for an acceptable price.

25. The grant, allowance, and payment of the Break-Up Fee are in the best interest of the estate and creditors. The Break-Up Fee has induced the Stalking Horse Bidder to submit a bid that will serve as a minimum sales price on which the Trustee and other bidders may rely. As such, the Stalking Horse Bidder will provide a material benefit to the sale process by increasing the likelihood that the best possible price for the Divine Dining Assets will be received by promoting more competitive bidding. Accordingly, the Break-Up Fee is fair, reasonable, and appropriate as it will maximize the value for the benefit of the estate.

26. The payment of a break-up fee is normal and customary in transactions of this

nature. Such fees frequently have been approved in connection with transactions in other chapter 11 cases. Break-up fees are a vital means to manage value maximization risk and weighs heavily in favor of approving the Break-Up Fee. Moreover, without prompt approval of the Break-Up Fee, the sale and liquidation process would be substantially hampered. Such fees encourage an initial bidder to invest the time, effort, and money necessary to consummate the transaction, despite the possibility that such bidder may not ultimately effectuate the transaction. A break-up fee is an important tool to be used to encourage bidding. Court approval of the Break-Up Fee is necessary, reasonable, and in the best interest of the estate and its creditors.

27. The Sales Procedures provide for receipt of "qualified bids" by "qualified bidders" and set forth the specific requirements for potential bidders. In addition to relying on other key parties in the case, including the Franchisor, the Trustee will also be contacting other existing franchisees of Taco Restaurants throughout the State of Texas to determine if they have an interest in participating in the sale process. The Sale Notice and Sale Procedures will provide an appropriate framework for obtaining offers for the Sale and will enable the Trustee to review, analyze, and compare all bids received to determine which bid is in the best interest of the estate and its creditors and should be presented to the Court for approval at the Sale Hearing. Similarly, the Sale Notice and Sale Procedures provide adequate notice of the assumption and assignment of executory contracts and assure compliance with the Bankruptcy Code and Bankruptcy Rules to provide contract parties with a fair and reasonable opportunity to protect their rights and interests. Therefore, the Trustee respectfully requests that this Court approve the Sale Notice and Sale Procedures at the initial hearing on this Sale Motion.

28. At the final hearing on this Sale Motion, the Trustee will present the highest and best offer to the Court for approval and request that a final order be entered approving the Sale and

the assumption and assignment of the Restaurant Contracts.

WHEREFORE, PREMISES CONSIDERED, the Trustee respectfully requests that the Court enter an order approving (a) the designation of the Purchaser as the "Stalking Horse Bidder" and the authorization to pay the Break-Up Fee subject to the conditions in the Sale Procedures, (b) the form and manner of notice as set forth in the proposed Sale Notice and the respective dates, times and places for the Auction and the Sale Hearing and the deadlines for objecting to the Sale and assumption and assignment of the Restaurant Contracts; (c) the form and manner of the Sale Procedures; and, at the final Sale Hearing (d) approval of the Sale and assumption and assignment of the Restaurant Contracts to the Successful Bidder; and (e) such other relief, both at law and in equity, to which the Trustee may be justly entitled.

Dated: December 12, 2018.  Respectfully submitted,

                                                                         */s/ Joe E. Marshall*
Joe E. Marshall
Texas State Bar No. 13031100
Marshall Law
3131 McKinney Ave., Suite 600
Dallas, Texas 75204
(214) 579-9173
Jmarshall@marshalllaw.net

Attorney for Jason Rae,
Chapter 11 Trustee

### CERTIFICATE OF SERVICE

The undersigned certifies that, on December 12, 2018, a true and correct copy of the foregoing Sale Motion was served on all parties listed on the attached service list by first-class mail, postage prepaid, and via the Court's CM/ECF system upon any additional parties accepting such service.

                                                                         */s/ Joe E. Marshall*
Joe E. Marshall