# EXHIBIT A-1

## SALE PROCEDURES

On August 27, 2018, Divine Dining, LLC (the "**Debtor**") filed a voluntary petition under Chapter 11 of the United States Code (the "**Bankruptcy Code**") commencing Bankruptcy Case No. 18-32805 (the "**Bankruptcy Case**") pending in the Dallas Division of the United Stated Bankruptcy Court for the Northern District of Texas (the "**Bankruptcy Court**"). Jason Rae has been appointed as the Chapter 11 Trustee for the Debtor's estate and is authorized to operate and manage the Debtor's assets.

These Sale Procedures have been approved and authorized pursuant to the *Order Approving (A) Sale and Assignment Procedures and Bid Protections in Connection with Sale of Assets and Assignment of Executory Contracts and Unexpired Leases; (B) Notice Procedures and Setting Date for Auction and Sale Hearing; and (C) Other Related Relief* [Docket No. _____ ] (the "**Sale Procedures Order**"), entered by the Bankruptcy Court on January __, 2019.

## A.    Assets to be Sold and Contracts to be Assumed and Assigned

The Trustee seeks to sell substantially all of the Debtor's estate assets, including, without limitation, inventory, certain furniture and equipment and related personal property that is utilized in the operation of the business, as well as general intangibles, including accounts receivable, customer lists, and business goodwill (collectively, all such assets of the estate except for the "Excluded Assets," shall constitute the "**Divine Dining Assets**"). The assets excluded from the sale include (i) cash on hand at the time of closing, (ii) accounts receivable as of the date of closing only to the extent such accounts are comprised of merchant credit card receipts necessary to cover the amount of accrued and unpaid expenses for the business operations and the costs of administration for the Bankruptcy Case as of the closing date, (iii) estate claims and causes of action against third parties including claims and actions under Chapter 5 of the Bankruptcy Code, and (iv) any and all executory contracts or leases not expressly assumed or assigned or rejected as of the date of Closing (the "**Excluded Assets**").

The Debtor is a party to unexpired leases and executory contracts, including the nonresidential real property lease for the principal place of business dated November 30, 2011 between the Debtor and Adelphia Group, Ltd. (together with all amendments and addendum thereto being collectively referred to as the "**Lease**") and a franchise agreement dated October 4, 2011 (the "**Franchise Agreement**") authorizing the operation of the business as a "Taco Casa" restaurant (collectively, the "**Restaurant Contracts**"). In connection with the sale of the Divine Dining Assets to a purchaser submitting the highest and best bid and approved by the Bankruptcy Court (the "**Successful Bidder**"), the Trustee intends to assume and assign the Lease and Franchise Agreement and any other Restaurant Contracts as requested by the Successful Bidder subject to that party's cure of any and all defaults under the assumed contract and providing adequate assurance of future performance as required by the Bankruptcy Code. Except as otherwise provided under the agreement entered into with the Successful Bidder, or by order of the Bankruptcy Court, the Divine Dining Assets shall be sold free and clear of all liens, claims, encumbrances, and interests.

At the auction contemplated by these Sale Procedures, the Trustee shall consider bids from one or more bidders for the Divine Dining Assets, provided that multiple bidders may not act together pursuant to a collusive agreement between or among them and the bid must be a "Qualified Bid" as defined under Paragraph E below.

## B.  Due Diligence

In order to participate in the sale process and receive due diligence information, a potential purchaser must comply with these Sale Procedures and deliver to the Trustee an executed confidentiality agreement (the "**Confidentiality Agreement**") in form and substance satisfactory to the Trustee. Through and including the Bid Deadline (as hereinafter defined), the Trustee will afford potential purchasers the opportunity to conduct their due diligence investigation regarding the Divine Dining Assets in a reasonable and appropriate manner subject to the business judgment of the Trustee. Upon execution of a Confidentiality Agreement, a potential purchaser will be provided with access to financial, operating, and legal information about the Divine Dining Assets and the Restaurant Contracts as previously maintained and provided by the Trustee to other bidders.  The Trustee does not warrant or represent the accuracy of the operational and financial information from the Debtor's books and records.  All potential bidders are encouraged to review the documents filed in the Bankruptcy Case, including, without limitation, the Debtor's Schedules of Assets and Claims, the Statement of Financial Affairs and the Monthly Operating Reports all of which provides certain information regarding the assets, claims and prior operations.

Notwithstanding the foregoing, the Trustee is not required to provide confidential or proprietary information to a competitor if the Trustee reasonably believes that such disclosure would be detrimental to the interests of the estate and/or ultimate sale of the Divine Dining Assets.

## C.    Stalking Horse Bid and Protections

The Trustee received a bid from North Texas Taco Casa, LLC (the "**Stalking Horse Bidder**"), which the Trustee has designated as a "stalking horse" bid (the "**Stalking Horse Bid**"). The Stalking Horse Bid is reflected in the *Asset Purchase Agreement dated August 25, 2018 and the Amendment to Asset Purchase Agreement dated November 1, 2018* (collectively the "**Asset Purchase Agreement**") attached as **Exhibit "2"** to the Sale Notice. With the designation of its bid as the Stalking Horse Bid, the Stalking Horse Bidder shall be entitled to the following bidding protections:

      i.     in the event the Stalking Horse Bidder is not the Successful Bidder and the conditions stated below have been satisfied, it shall be entitled to a break-up fee in the amount of $25,000.00 (the "**Break-Up Fee**"). The Break-Up Fee shall be an obligation of the estate and shall be payable as an allowed administrative expense pursuant to section 503(b) of the Bankruptcy Code. The Break-Up Fee shall be payable in cash at the closing of the Sale or promptly thereafter from the sale proceeds thereof in accordance with the Asset Purchase Agreement and the Sale Procedures Order. The Break-Up Fee shall be paid without need for any further motion, application, notice, approval or order of the Bankruptcy Court if (i) the

Stalking Horse Bidder is not in default and has not previously terminated its bid, (ii) the Stalking Horse Bidder's bid remains outstanding until closing of the Sale, and (iii) the Stalking Horse Bidder is not an "insider" of the Debtor, as such term is defined in Section 101(31) of the Bankruptcy Code; and

ii.   any other potential purchaser desiring to participate in the Auction must submit a Qualified Bid (defined hereinbelow) of no less than $30,000 more than the amount of the Stalking Horse Bid.

**D.    Submission of Bids by Potential Purchasers**

Any potential purchaser desiring to participate in the auction scheduled and administered by the Trustee for the Divine Dining Assets (the "**Auction**") shall deliver its Qualified Bid in writing to Jason Rae, Chapter 11 Trustee, Lain, Faulkner & Co., P.C., 400 N. St. Paul Street, Suite 600, Dallas, Texas 75201, such that the Qualified Bid is received no later than **January 22, 2019 at 5:00 p.m.** (the "**Bid Deadline**").

If any Qualified Bid is to include the assumption and assignment of any Restaurant Contracts, then on or before the Bid Deadline, the bidder shall also designate the Restaurant Contracts that it expects to request the Trustee assume and assign to it and, separately with its Qualified Bid, provide information and documentation satisfactorily evidencing the bidder's ability to cure any and all defaults under such contracts and provide adequate assurance of future performance of such contracts or leases in accordance with the Bankruptcy Code (an "**Adequate Assurance Package**"). Any required Cure Amount shall be in addition to the amount paid for the Divine Dining Assets. All Adequate Assurance Packages must be submitted in writing so that they are received as part of the Qualified Bid.

**E.    Determination of Qualified Bids**

To be a "**Qualified Bid**," for purposes of affording a potential purchaser the right to participate in the Auction, the bid must be in writing and fully comply with the following:

i.    be received by the Trustee on or before the Bid Deadline;

ii.   be on terms that confirm that the party can close the sale without conditions on or before **February 25, 2019** pursuant to a stand-alone Asset Purchase Agreement approved at the Sale Hearing;

iii.  be accompanied by a duly executed version of the Asset Purchase Agreement and a marked-up version of the Asset Purchase Agreement reflecting variations from the Stalking Horse Bidder's Asset Purchase Agreement, and that clearly specifies the total consideration that the potential purchaser is willing to pay at Closing;

iv.   be accompanied by reasonably satisfactory evidence of committed financing or other ability to perform the transaction and provide an earnest money deposit of **$25,000** (the "**Earnest Money Deposit**") in the form of a certified check or wire

transfer to the Trustee, such Earnest Money Deposit being refundable by the date contained within the Sale Procedures Order, unless such bidder is selected as the Back-up Bidder (as defined below) and is required to close;

v. provide that such bidder's offer is irrevocable until the closing of the purchase of the Divine Dining Assets if such bidder is the Successful Bidder or Back-up Bidder;

vi. provide sufficient indicia that such bidder, or its representative, is legally empowered, by power of attorney or otherwise, and financially capable to (i) bid on behalf of such bidder; and (ii) complete and sign, on behalf of such bidder, a binding and enforceable purchase and sale agreement; and (iii) agree that the bid will contain no contingencies to the validity, effectiveness, and/or binding nature of the offer including, without limitation, contingencies for financing, due diligence, or inspection;

vii. identify the previously designated Restaurant Contracts to be assumed and assigned in connection with the purchase of the Divine Dining Assets and provide evidence of the bidder's ability to cure any and all defaults under such contracts and to provide adequate assurance of future performance under such Restaurant Contracts; and

viii. meet all other requirements of these Sale Procedures and the Sale Procedures Order.

**F.** **Determination of Qualified Bidders**

In order for a bidder to qualify as a "**Qualified Bidder**" and be permitted to bid on the Divine Dining Assets, such potential purchaser must, in the Trustee's absolute and sole discretion:

i. have been deemed "financially qualified" by the Trustee, which at a minimum shall require any such bidder to (i) provide documentation establishing that such person has sufficient cash on hand or a binding financial commitment from an established and financially sound financial institution to ensure such bidder's ability to meet its commitment pursuant to its bid and to close the transaction within the time frame established, and (ii) demonstrate to the Trustee's satisfaction that it has the legal capacity to complete the sale it is proposing and to satisfy the conditions under the Purchase Agreement;

ii. have delivered to the Trustee a Qualified Bid; and

iii. meet all other requirements of the Sale Procedures and the Sale Procedures Order.

No bidder will be a Qualified Bidder and have its bid considered by the Trustee unless such party has met the above requirements as determined in the sole and absolute judgment of the Trustee. The Trustee shall promptly notify all bidders who are selected as Qualified Bidders of such selection.

G.     **The Auction and Selection of the Successful Bid**

In the event the Trustee receives one or more timely and conforming Qualified Bids by the Bid Deadline and, in the business judgment of the Trustee, are superior to the Stalking Horse Bid, the Trustee shall conduct an Auction for the sale of the Divine Dining Assets at the offices of Lain, Faulkner & Co., P.C., 400 N. St. Paul Street, Suite 600, Dallas, Texas, or at such other location as may be timely disclosed by the Trustee to the Qualified Bidders. The Auction shall commence on **January 28, 2019 at 10:00 a.m.** No persons other than representatives of the Trustee and each Qualified Bidder may participate in the Auction.

All Qualified Bidders must appear in person at the Auction, or through a duly authorized representative present in person. Prior to the Auction, the Trustee shall select one Qualified Bid that, in his business judgment, reflects the highest or otherwise best value for the estate as the starting bid (the "**Starting Bid**") and advise all participants in the Auction of the terms of the Starting Bid.

If multiple Qualified Bids satisfying all Auction requirements are received and the Trustee determines to proceed with an Auction as set forth above, each party shall have the right to continue to improve its bid at the applicable Auction.

With respect to each round of bidding at the Auction, following the Starting Bid, each successive bid must be at least $10,000 in cash or other ascertainable value (the "**Overbid Increment**") in excess of the aggregate consideration contained in the then highest standing Qualified Bid. The Trustee retains the sole and absolute discretion to modify the Overbid Increment during the course of the Auction if necessary to facilitate an efficient auction process. In addition, the Trustee, in its business judgment, will determine whether any revised bid satisfies the Overbid Increment. By making a Qualified Bid at the Auction, a Qualified Bidder shall be deemed to have agreed to keep its final Qualified Bid open through Closing as stated in the Sale Procedures Order.

The Auction shall conclude as determined by the Trustee. At the conclusion of the Auction, and subject to Court approval following the Auction, the highest standing Qualified Bid shall be determined and announced by the Trustee (the "**Winning Bid**").

The Successful Bidder shall complete and sign all agreements, contracts, instruments or other documents evidencing and containing the terms and conditions upon which such Winning Bid was made.

After selecting the Successful Bidder, the Trustee shall file and serve a notice of selection identifying (i) the Successful Bidder, and (ii) the Winning Bid.

The Trustee may adjourn, continue, re-open, or terminate the Auction, subject to any required approval of the Bankruptcy Court, and reserves the right to adopt other and further rules and procedures for the Auction that, in his business judgment, will better promote the goals of the Auction.

### H. Assumption and Assignment of Restaurant Contracts

The Trustee intends to Assume and Assign the Lease and Franchise Agreement to the Successful Bidder along with any other Restaurant Contract which it designates as part of its Qualified Bid. The Sale Motion identified the parties to the Lease and Franchise Agreement ("**Contract Party**") and the maximum amount that the Trustee believes necessary to cure any defaults under those agreements by the Successful Bidder for purposes of section 365(b)(1)(A) of the Bankruptcy Code (the "**Cure Amount**"). In the event a Contract Party disputes the Cure Amount, such Contract Party must file with the Bankruptcy Court and serve on the Notice Parties identified in the Sale Procedures Order an objection ("**Cure Claim Objection**") no later than **January 17, 2019** (the "**Cure Claim Objection Deadline**"). The Cure Claim Objection must (i) state the legal and factual bases of the objection, (ii) state the amount the Contract Party believes constitutes its Cure Amount, (iii) contain an itemization of all claimed defaults under the respective contract, and (iv) identify the specific contractual provision in the Contract Party's contract and/or the applicable law that forms the basis of the amount of any and all defaults that are required to be cured. If a Cure Claim Objection is not filed on or before the Cure Claim Objection Deadline, then such Contract Party shall be deemed to (i) consent and agree to the Cure Amount, and (ii) waive any and all objections to such amounts that might otherwise be asserted at the Sale Hearing.

Additionally, following the Auction and identification of the Successful Bidder, any Contract Party who contests the Trustee's right to assume and assign their respective Restaurant Contract to the Successful Bidder shall file with the Bankruptcy Court and serve on all Notice Parties under the Sale Procedures Order an objection to such assumption and assignment ("**Assignment Objection**") on or before **February 5, 2019** ("**Sale Objection Deadline**").

If no Assumption Objection is filed and served before the Sale Objection Deadline by a Contract Party, then such party shall be deemed to (i) consent and agree to the assumption and assignment of their designated Restaurant Contracts under section 365 of the Bankruptcy Code, (ii) have consented and agreed to such Cure Amounts, and (iii) waive any and all objections to the assumption and assignment of their respective Restaurant Contracts by the Trustee to the Successful Bidder. If an Assumption Objection is timely filed prior to the Sale Objection Deadline, the Bankruptcy Court will consider the objection in conjunction with the Sale Hearing (as identified below) or as otherwise scheduled by the Bankruptcy Court for resolution.

### I. Objections to the Sale

Any and all other objection(s) to the sale of the Divine Dining Assets shall be (i) set forth in writing and specify with particularity the legal and factual grounds for such objections or other statements of position, and (ii) filed with the Court and served on the Notice Parties on or before the Sale Objection Deadline of **February 5, 2019**, pursuant to the Sale Procedures Order or as otherwise established by any subsequent notice and Order of the Court.

### J. Court Approval

The Sale Hearing at which the Trustee will request the Bankruptcy Court to approve the Sale of the Divine Dining Assets and assumption and assignment of Restaurant Contracts (the

"**Sale Hearing**") will be held before the Honorable Stacey G. C. Jernigan, United States Bankruptcy Judge, on **February __, at ____ p.m.** in Courtroom #1 on the 14th Floor of the Earl Cabell Federal Building, 1100 Commerce St., Dallas, Texas 75242. The Sale Hearing may be adjourned or rescheduled as ordered by the Bankruptcy Court or by the Trustee with the approval of the Successful Bidder and without further notice to creditors and parties in interest other than by announcement by Trustee of the adjourned date at the Sale Hearing.

The Trustee's presentation to the Bankruptcy Court for approval of the Winning Bid does not constitute the Trustee's obligation to close on the Winning Bid. The Trustee will be obligated to close on the Winning Bid only when the bid and applicable Asset Purchase Agreement has been approved by Order of the Bankruptcy Court.

**K.**      **Closing**

The closing of the sale of the Divine Dining Assets and assignment of the Restaurant Contracts shall occur no later than **February 25, 2019** (the "**Closing Deadline**"); provided, however, that this requirement may be waived upon the agreement of the Trustee with the Successful Bidder.

**L.**      **Failure to Consummate Purchase**

If the Successful Bidder fails to consummate the purchase of the Divine Dining Assets and assignment of any Restaurant Contracts, and such failure to consummate the purchase is the result of a breach by that Successful Bidder, the Earnest Money Deposit of the Successful Bidder shall be forfeited to the Trustee.

**M.**      **Back-Up Bidders**

If the Successful Bidder fails to consummate the Sale because of a breach or failure to perform on the part of that Successful Bidder, the Qualified Bidder that had submitted the next highest or otherwise best Qualified Bid at the Auction (the "**Back-Up Bidder**") will be deemed to be the Successful Bidder, and the Trustee will be authorized to consummate the Sale of the Divine Dining Assets with such Back-Up Bidder without further order of the Bankruptcy Court and such Qualified Bid shall thereupon be deemed the Winning Bid. If any Qualified Bidder fails to consummate a Sale because of a breach or failure to perform for any reason within seven (7) days after being deemed the Back-Up Bidder pursuant to this section of the Sale Procedures, the process described above may continue as determined by Trustee until a Qualified Bidder shall consummate the Sale.

**N.**      **Return of Earnest Money Deposit**

The Earnest Money Deposit of all Qualified Bidders (other than the Successful Bidder and the Back-Up Bidder) will be returned without interest to each such Qualified Bidder.

The Earnest Money Deposit of the Successful Bidder will be distributed pursuant to and in accordance with its Asset Purchase Agreement. The Earnest Money Deposit of the Back-up Bidder

will be returned without interest to the Back-Up Bidder by the deadline as set forth on the Sale Procedures Order, unless the Successful Bidder shall have failed to complete the purchase of the Divine Dining Assets by such date.

**O. Reservation of Rights**

1. <u>Determination of Successful Bid</u>. The Trustee reserves the right to (i) determine in its reasonable discretion whether any Qualified Bid is a Winning Bid and (ii) reject, at any time prior to the entry of the Sale Order by the Bankruptcy Court, without liability, any bid that the Trustee, in its reasonable discretion, determines to be (a) inadequate or insufficient, (b) not in conformity with the Sale Procedures Order or the Bankruptcy Code, or (c) contrary to the best interests of the estate.

2. <u>Modification of Bidding Procedures</u>. The Trustee reserves the right to modify the Sale Procedures in a nonmaterial manner to provide for a more efficient and effective sale process without the need for any further order of the Bankruptcy Court, including, without limitation (i) extending the deadlines set forth in these Sale Procedures, (ii) rescheduling the Auction and/or continuing the Sale Hearing, and (iii) withdrawing any of the Divine Dining Assets from the sale process at any time prior to or during the Auction.

3. <u>Preservation of Trustee's Business Judgment</u>. Nothing contained in these Sale Procedures, shall limit, restrict, alter, modify, waive or otherwise impair the Trustee's reasonable business judgment in relation to the sale process contemplated by these Sale Procedures.

**P. As Is, Where Is**

The sale of the Divine Dining Assets shall be on an **"as is, where is"** basis and without representations or warranties of any kind, nature, or description by the Trustee, its estate, or its agents and representatives. Except as otherwise expressly provided in these (a) Sale Procedures, (b) the Stalking Horse Bid, or (c) any court approved Asset Purchase Agreement, by submitting a bid, each Qualified Bidder shall be deemed to acknowledge and represent that it (i) has had an opportunity to conduct any and all reasonable due diligence regarding the Divine Dining Assets and Restaurant Contracts prior to making its bid, (ii) has relied solely upon its own independent review, investigation and/or inspection of any and all documents and/or the Divine Dining Assets in making its bid, and (iii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Divine Dining Assets or Restaurant Contracts, or the completeness of any information provided in connection therewith.